May it please the Court, Lawrence Rolfing on behalf of David Scott Elliot. This is an erisic disability case. It's a math problem. The question is whether Mr. Elliot, when he received, properly received, cost of living increases in 2000, 2001, 2002 of $300, $268 and $148, whether his receipt of Social Security benefits beginning in February of 2003 would eliminate part of the cost of living increases that were previously calculated. And I don't think that it's a fair reading of the policy that those prior granted cost of living increases would ever evaporate. The reason for that is... Can I ask you just a quick informational question? Sure. I don't really mean to interrupt you. Did he have to apply under the terms of the ERISA plan for Social Security disability benefits? I don't think that he was forced to apply. So basically by applying, if he wasn't forced to, essentially as I read this, and I have to say that if I don't get Alzheimer's, it's because of my ability to understand the math in this case, but if I understand it correctly, then he's worse off for having applied for Social Security disability benefits than if he had not. By $129 a month for the rest of his life. Yes. Plus they took back more than he got. Correct. And the insurance company essentially benefited. It was then in the insurance company's interest in general for him to apply to SSD benefits. He applies for SSD benefits and he's worse off. Is that an accurate statement of what went on here? That is spot on, Your Honor. Then go back to where you were. I thought most of these disability policies, and in fact I even thought it was in this one here, that a recipient of the benefits is required to apply for Social Security disability benefits. Well, the carrier never told Mr. Elliott to apply. In fact, he applied in 2004 on his own and wasn't encouraged to apply until after he'd already started the process. But under the policy, it was known that if he received benefits or other kinds of income, that it would be offset, right? Absolutely, Your Honor. And if I'm receiving a $10,000 a month insurance policy, and by the time 2003 is rolling around, it's $2,716 a month, and Social Security tells me, well, if we pay you, you'll get $1,811 a month, it's like, okay, well, that money goes back to the insurance company because I can read the policy and it says that they get an offset for that. I don't think that you can read that policy language and come away with the impression that me going after that $1,800 policy, $1,811 disability insurance benefit under the Social Security Act, is going to cost me $2,000 a month from the insurance company. It costs him more. He was getting $10,700 a month, and after USIC or Fortis got through in adjusting his benefits, he wasn't at $10,700 in aggregate income. He was at $10,550 a month in aggregate income benefits. He went backwards financially. So the thank you from USIC for getting them the $1,800 a month in an offset is, we're going to charge you more than $1,811 a month. And I don't think that that's a fair reading of the policy. The policy is very clear. The prior COLA amount will be included in the above factor. That's what the policy says. And the COLA benefit is never applied on the scheduled amount less other income benefits. The COLA amount is based on the benefit payable. It's the benefit payable in December of 2000, December of 2001, and December of 2002. So he gets his 3 percent. He gets his 2 percent. He gets his 1.4 percent. He gets those. And there isn't anything in the policy that says, well, since we're going to reduce your benefit by 1811 as of February of 2003, that we're going to reduce your prior cost of living increases by 7 percent of 1811. There just isn't any warning. And the regulations are clear, and the Secretary of Labor gets the first crack at construing the statute. And this Court should defer to the Secretary of Labor's construction of the statute of ERISA, that the claimant needs to be told in clear and unequivocal terms exactly what the circumstances are that could eliminate or result in a forfeiture or a loss of benefits. Could I ask you in that regard, there wasn't, I don't see anything in the record that's labeled a summary plan disposition. You suggest in your brief, and as I read the certificate of insurance, it looks like what a summary plan disposition should look like. But is there, for example, there's also pages of the training manual that did your client have the training manual when he was given the policy information? The training manual was provided during discovery after litigation ensued. The only thing that Mr. Elliott had when he lost his leg and when he applied for Social Security benefits five years later, four and a half years later, was the certificate of insurance. No, no. But when he applied for the insurance, did they, I mean, when he got the policy, did he, normally when you get the policy, you get the SPD. Did he get, did he have any part of the training manual, including the part that appears on page H52 of the record? No. Did not. And you, at one point, there's a reference to that. Was that inadvertent? I mean, you did not get an SPD, is that right? That is correct. All we have is the certificate of insurance and the policy of insurance. There's no document entitled summary plan description or plan document. There just isn't any. In the district court's opinion, apparently, he says on September 18, 2006, Plaintiff's counsel stated that he had received a copy of the certificate of insurance and the summary plan disposition from Plaintiff, and he believed that it had validated his analysis. Now, was there a separate summary plan disposition, or were you simply equating the certificate of insurance? I was equating the two and then fuzzing the line between the two. But there just is the summary plan. I mean, I'm doing it again, the certificate of insurance. If there was a summary plan description, it would be in the excerpts. And I'm sure that USIC, with its resources, would have produced supplemental excerpts if there had been one, and there isn't any. So does your whole argument turn on how you define benefit? It turns on how we define benefit payable. Yes. The insurance company wants to focus on the scheduled amount. The benefit amount. The benefit amount. $10,000. Right. As the scheduled benefit, less the offset amount. And Mr. Elliott is focusing on the insurance policy language, which was the benefit payable. And the benefit payable as of December 19, 2000, was $10,000 a month, and he was entitled to a 3% increase, which increases benefit to $10,300. The later imposition of an $1,811 offset in 2003 doesn't eliminate the $300. That was a properly calculated and implied cost of living. We get the cost of living increase on the amount that he received from Social Security as well. Right. Now, the insurance company did apply a cost of living increase for December of 2003, and we have the intervening in February of 2003 Social Security benefit. And so I think I would concede properly that that cost of living increase needed to be recalculated because the benefit payable as of December 20, 2003, was $1,811 less, whereas the insurance company wants to say it was $2,000 less. And I'll reserve my remaining 25 seconds. Okay. Good morning. May it please the Court, James Moak for the appellees in this matter. Was there an SPD in this case? The certificate is the SPD, Your Honor. The certificate of insurance is the summary plan description. Yes, sir. And the training manual, did he get that when he applied for this insurance? No, counsel is correct. That was produced in the course of discovery. It was not provided to the insurer at any point. And is there anything in the certificate of insurance that would tell somebody that essentially they were worse off for applying for Social Security disability benefits than if they hadn't? Well, I'm not sure I accept the basic premise. He's worse off in dollar amounts because of the mathematics involved. Well, whatever reason. No, it's important that the reason be clear, Your Honor, because. . . Well, the question is what his reasonable expectation was on the basis of the information that he had. I would be surprised to learn that. I don't accept that premise either, Your Honor, because I don't think reasonable expectations was an argument that was raised in the district court. I don't think. . . Well, let's assume we either disagree with you or we have the discretion to consider it anyway. Well, then he's told in the certificate of insurance at page 10 that we will pay the schedule amount minus the offset amount. The offset amount is the Social Security amount, so we're clear there. And the cost of living adjustment, all of this on the same page, page 10 of the certificate, says that any benefit payable will be multiplied by 3%. The reason the numbers come out the way they do. . . The benefit payable was what he was. . . At the time that the retroactive increase became effective was the benefits that he was actually getting, the initial benefit plus the cost of living adjustments for the years that he wasn't getting any Social Security disability benefits. That was the. . . Why isn't that the amount payable? That is the amount payable. If I understand the court correctly, that is the amount payable. The problem. . . What's wrong with his analysis? So you take the amount payable and you deduct my monthly Social Security payment. The problem with his analysis, Your Honor, is that we're not arguing about the cost of living adjustments that were made prior to 2003. He gets those. The problem is that from 2003 to 2006, the company could have deducted anticipated Social Security benefits, but didn't. Trying to be nice people, they kept the whole $10,000 and compounded COLA on top of that. And so when the Social Security Administration in 2006 says, we're going to award you a lump sum benefit retroactive to 2003, we have to back up to 2003 and figure out what the amount payable was in light of that retroactive award by the Social Security Administration. Could you say that again? I can try. I just want to be sure I understand. Sure. What happened here was that this gentleman became disabled in 1999. Right. He begins getting disability benefits after the waiting period is expired. Right. And the company applies the 3% cost of living adjustment. And there's no issue until about February of 2003. Exactly. He applies for Social Security benefits, and the question was raised about whether or not he has to apply. It is part of the contract that he will apply, or the company has the right to offset anticipated Social Security benefits. I've never seen a disability policy that doesn't include that requirement. Congress is crazy for allowing this to go on, but go on. You end up benefiting the taxpayer's expense. Well, no, I don't think that's true either. The Social Security Administration's expense. I'm going to write my congressman after this case is over, but I don't want to interrupt. It is what it is. Just go ahead. All right. Anyway, he applies for Social Security benefits. The process takes as long as the process takes. And in the meantime, the company is treating him as if he's not getting Social Security benefits. $10,000 is getting compounded by 3%. Whatever. Okay. 2006, they award him Social Security benefits retroactive to February of 2003. So he's getting Social Security benefits for a three-year period when USEC is already paying him the full $10,000, which should have been offset by the Social Security benefits in that period. So they go back. But as I understand it, you get that back. You suspend payments. You suspend monthly payments to claw back that amount of money. They do get that back, Your Honor. The problem, the $129 issue that we're talking about has to do with the compounding of interest that occurs, because the COLA is being paid on $10,000 instead of COLA being paid on $8,000. So the compounding number ultimately ends up higher than it would have been if we'd have. For example, if this gentleman had applied for disability benefits with the Social Security Administration on February of 2003 and been immediately awarded those benefits in February of 2003, there wouldn't be any issue, because the amount payable would be $8,111, and that's what we would apply the COLA to. Under his argument, he's better off waiting, getting a retroactive agreement, because then he gets to keep, you know, as I said in the district court below, he has to give back the cake, but he gets to keep the icing. Well, that gets back to what a reasonable person would have understood and what his reasonable expectations were. I mean, it seems to me that a reasonable person would have not expected, essentially, to have been worse off in his own mind by having applied for SSD benefits, and there doesn't seem to be anything in the certificate of insurance that would have alerted him to this. I mean, one of the rules that have been promulgated in the CFR talks about having graphic descriptions, examples, and I don't see anything really that would alert somebody to the fact that this is what's going to happen. Well, Your Honor, as this Court, as Judge Noonan recognized in the Clark case, we can't anticipate every scenario. This isn't an every scenario kind of a case. You have a provision. You start paying him benefits. You have a provision that he has to apply for SSD benefits. Most people know, at least in the insurance business, I assume, how long it takes to get a decision from the Social Security Administration, and yet there's nothing, as far as I could see, that would alert a policyholder to that this was going to happen. Well, Your Honor, the certificate says, we're going to apply a cost-of-living adjustment on any benefit payable. The benefit payable change. He says he understands any benefit payable to mean what he was getting as of the date that the Social Security payments were retroactive to. So if he was getting $10,300, that was the benefit payable, and you would work $10,700, whatever it is, you would reduce the benefit payable, which was that, by the amount he was getting from Social Security. In other words, my suggestion is that even if you're right on all this mathematical calculation and your construction of the policy, you really didn't explain that well enough to the plan beneficiary, and that you essentially were required to do that. Well, again, not an argument raised below, and I don't know that there's anybody who has any reasonable expectation. He cites, in his reply brief, he cites places where it seems to me that argument is raised, and this is an issue that we have discretion to consider under our precedent, even if it wasn't raised. Okay. Assuming it's raised, do you win on this ground or do you lose? I think we win on this ground. Well, where is he told? He's told in the certificate at page 10 where it's explained what the cost of living adjustment is. Your Honor, his position, it is not reasonable, I would submit, for him to think that he's going to get both the cost of living adjustment on what USEC pays and the cost of living adjustment on the Social Security portion of the payment. He'd be getting 6 percent. This is a lot like if you had $10,000 that didn't belong to you and you put it in the bank and it accrued interest and somebody came along and said, give the $10,000 back to us, and you gave the $10,000 back and said, you're right, you get the $10,000 back, but I get to keep the interest, and not only do I get to keep the interest, but you have to pay me interest going forward as if all that money was still in the bank. That is not a reasonable position. Well, look, this is why I asked you to repeat what you had said earlier. There were three years before the Social Security payments became applicable. It was retroactive to 2003. He's getting his $10,000 monthly payment plus cost of living adjustments on that $10,000, and he should have been getting it on $8,000. I think Judge Newman has a question for you. Yes, Your Honor. You are a fiduciary, are you not? Yes, at least one of the appellees is a fiduciary. And you have a duty to the beneficiaries? We have duties to the beneficiaries. You have a duty to the beneficiaries? Yes, sir. Yes. And you think it's compatible with that duty, the duty of a fiduciary, to let them get into a situation where they get money from the government, with the result they get less from you? You think that's good? You think that's a fiduciary performing his duty? Your Honor, I think they exceeded their fiduciary duty. If they had simply ---- No, I'm asking you, is that what a fiduciary does? I'm responding to your question, Your Honor. I think they exceeded their fiduciary duty because they paid him when they didn't have to. And if they hadn't paid him when they didn't have to, we wouldn't be here. Where's the provision in the policy that says that they could have anticipated what he was going to get from Social Security and done sort of a preemptive deduction? Is it page 12 of the certificate, Your Honor, estimate of benefits? So if you are eligible or would be paid such benefits if you had applied for them or had applied for them on time. So let me ask you this. What was this standard of review here that the district court applied? It's an abuse of discretion standard of review tempered by structural conflict. And in your view, what provision of the policy was the administrator interpreting to reach the result that it did? It was interpreting the amount of benefit portion of the policy. Together, there's an overlay of the adjustment of benefit portion of the policy. Which can you tell me exactly? Sure. There are three portions of the certificate that are germane to our discussion. One of them is the amount of benefit portion of the policy at page 10. The second is, and I'm referring to the certificate. Yes, I got it right here. The amount of benefit we will pay is? Yes. Minus the offset amount. Yes, the cost of living on the amount payable. Okay. The second section is the estimate of benefits that we just talked about, which is at page 12. And then there's an adjustment of benefit provision at page 13. Adjustment of benefits. Is that what it's called? Is that the heading? Adjustment of benefits? Yes, Your Honor. It's at page 13 of the certificate. Then there's a separate one called cost of living adjustment. Yes, Your Honor. That's on the amount of benefit, which is two or three pages before that. So let me ask you this. So they didn't estimate any benefit amount from Social Security, correct? They did not. They could have, but they didn't. So why do we even look to the estimate of benefits provision? Well, because part of it is to demonstrate that the company was, in fact, behaving as a fiduciary and bending over backwards. They could have done this. They didn't. And part of it is to explain where the problem arose. By trying to be nice people, they ran into this compounded COLA adjustment issue that brings us here today. So your argument is, if I understand it, that from 1999 to 2002, you gave them too much money because you should have anticipated. You could have started off even before he got the Social Security disability payments. You could have started off on the assumption that he was going to get it. No, Your Honor. I'm sorry. I'm apparently having difficulty making that clear. The problem arises between 2003 and 2006. Right. Right. All of the cost of the living adjustments between 1999 and 2003, he got and he kept. Right. What Judge Crone was just saying, though, is that you could have, when you awarded him benefits, you could have estimated that he was going to get. We could have, Your Honor. That he was going to get, you know, $1,500 in Social Security benefits. And going forward after the first year, you could have deducted his, you could have deducted that amount from his $10,000 and, you know, paid benefits on that basis. And cost of living adjustment on that basis. We could have. But remember, the problem for the insured, if we do that, is that he's then using your numbers getting $8,500 instead of $10,000 for three years until the Social Security Administration kicks in and pays him back pay plus interest. So your argument is you're essentially giving him a loan and therefore you shouldn't count the cost of living adjustments as part of the amount payable? I don't think that anybody would characterize it as a loan, although I guess technically it probably is. Whatever you want to. Money he shouldn't have received, but you were nice guys? Yes. Okay. Thank you. Okay. Thank you. I'll give you a minute for rebuttal here. Thank you. The policy provision that Mr. Elliott was insured under in this policy is an occupational, and Social Security is not an occupational policy. Social Security is can you perform any occupation, whether you're age, education, work experience. The administrative law judge didn't find that Mr. Elliott became disabled in 1999 when he lost his leg. He found that he became disabled in 2001. And the insurance company, had they said in 2000 or 2001, you have to apply for Social Security, we're going to offset your benefits if you don't because you could apply, then we would be in a different situation today. But to take Mr. Moat's hypothetical, if Mr. Elliott had gone into Social Security and applied in February of 2003, and they said, okay, here's your check for 1811, that's your benefit amount, USEC would have turned around and reduced his benefit, not by 1811, but by $1,940.67. That's the problem, and we'd still be here today. Say that again? The offset amount is not 1811 in the aggregate. USEC reduced its payment to him from January to February of 2003 by $1,940.67. Mr. Elliott went backwards from that day forward and into perpetuity until this policy expires. And that's the problem in this case is that that's not how fiduciaries act and that's not how a reasonable person would read this insurance policy. And if I get you a credit so you have to pay me less, I don't expect the credit that you're going to pay me less to be more than the credit that I'm getting from another source. Did you make the argument to the district court below that Judge Corman here has been stressing? Yes, I did. And I didn't cite the Saltorelli case. That's the only difference. I cited the CFR and I advocated the legitimate expectations of the insured throughout in front of Judge Larson. Okay. Okay, thank you. Thank you, counsel. Elliott v. Fortis Benefits is submitted at this time. I'd appreciate it if my law clerks would come up here for a minute. Thank you. Manner of Disclosure of Dispension of Status Insurance. Thank you. Thank you. Yes. All right. All right. All right. All right.
judges: Korman, Noonan, Paez